1999 PA Super 1

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Allen FEASER, Appellant.**

**Commonwealth of Pennsylvania, Appellant,**

v.

**Allen Feaser, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 23, 1998.
Filed Jan. 6, 1999.

John R. Kelsey, III, Lebanon, for Allen Feaser.

Jennifer Wisniewski, Assistant District Attorney, Lebanon, for Commonwealth.

Before JOHNSON, HUDOCK and HESTER, JJ.

HUDOCK, J.:

¶ 1 Allen Feaser (Feaser) and the Commonwealth cross-appeal from the order of the trial court that limited the number of charges upon which Feaser can be retried. As part of his ruling, the trial judge analyzed and applied the principles of double jeopardy. We affirm.

¶ 2 The facts and procedural history can be summarized as follows: In the early morning hours of June 6, 1993, Dwayne Reynolds (Reynolds) and Osvaldo Lopez (Lopez) engaged in a bar brawl. After Reynolds threw Lopez out of the bar, the fight continued outside. Feaser, assisting Reynolds, followed the fight out of the bar, blocked Lopez's escape route and punched and kicked Lopez. Ultimately, Lopez was stabbed and killed. Both Reynolds and Feaser were arrested in connection with Lopez's death. Reynolds later pled guilty to murder.

¶ 3 The Commonwealth charged Feaser with criminal homicide, criminal conspiracy to commit homicide, aggravated assault, criminal conspiracy to commit aggravated as-

sault and hindering apprehension or prosecution.[1] After a jury trial, Feaser was found guilty of third-degree murder, simple assault and hindering apprehension. The jury found him not guilty of both conspiracy counts and of aggravated assault.

¶ 4 After trial, it was discovered that a juror had failed to disclose the fact that he harbored animosity toward Feaser. The trial court held a hearing to investigate the alleged jury taint and granted Feaser's motion for a mistrial. The Commonwealth appealed the trial court's ruling, but this Court affirmed it. *Commonwealth v. Feaser*, 454 Pa.Super. 703, 685 A.2d 1042 (Pa.Super.1996) (unpublished memorandum). Our Supreme Court then denied the Commonwealth's petition for allowance of appeal. *Commonwealth v. Feaser*, 548 Pa. 644, 695 A.2d 784 (1997).

¶ 5 The Commonwealth attempted to retry Feaser on all of the original charges, including first-degree murder. In an omnibus pre-trial motion, Feaser challenged, *inter alia*, the Commonwealth's position regarding which charges may be brought against him at the second trial. He contended that re-prosecution on all counts would subject him to double jeopardy in violation of the Fifth Amendment to the United States Constitution, Article One, Section Ten of the Pennsylvania Constitution and Section 109 of the Crimes Code. The trial court held that the Commonwealth could retry Feaser for third-degree murder on the theory of accomplice liability, but that the principles of double jeopardy barred the Commonwealth from pursuing a conviction for first-degree murder, criminal conspiracy or aggravated assault. These cross-appeals, which have been consolidated for review, followed.[2]

¶ 6 In these appeals, the Commonwealth argues: (1) that its re-prosecution of Feaser on the homicide count should not be limited to third-degree murder and (2) that it should be allowed to seek a conviction for aggravated assault. Commonwealth's Brief, filed at

---

1. 18 Pa.C.S.A. §§ 2501, 903(a), 2702(a)(1), 903(a) and 5105(a)(2) & (5), respectively.

2. "Pre-trial orders denying double jeopardy claims are immediately appealable in the absence of a written finding of frivolousness" by

the hearing court. *See, e.g., Commonwealth v. Teagarden*, 696 A.2d 169, 170 n. 2 (Pa.Super.1997). "Because there has been no discrete finding of frivolousness by the trial court, we have jurisdiction to entertain this appeal." *Id.*

1018 Harrisburg 1997, at 3. Feaser also raises two issues for our review: (1) whether the fact that the jury acquitted him of the aggravated assault charge at trial bars his reprosecution for third-degree murder and (2) whether an acquittal on the charge of criminal conspiracy to commit murder acts to prevent the Commonwealth from seeking a conviction for third-degree murder on a theory of accomplice liability. Feaser's Brief, filed at 934 Harrisburg 1997, at 3.

¶ 7 Initially, we note that the protections afforded by the federal and state double jeopardy clauses are co-extensive under Pennsylvania jurisprudence. *Commonwealth v. Lively*, 530 Pa. 464, 467, 610 A.2d 7, 8 (1992). While our Supreme Court has concluded that the double jeopardy clause of our constitution provides criminal defendants with broader protection in cases of intentional and egregious prosecutorial misconduct, no such misconduct occurred in the instant case. *Compare Commonwealth v. Hockenbury*, 549 Pa. 527, 701 A.2d 1334 (1997), *with Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978). Therefore, we will employ a unitary double jeopardy analysis in these appeals.

 ¶ 8 Despite the state and federal prohibitions against placing an individual twice in jeopardy, it is well-established that a defendant may be tried twice for the same offense following the successful appeal of a conviction. *Hogan* at 338, 393 A.2d at 1135; *Commonwealth v. Lafferty*, 315 Pa.Super. 241, 461 A.2d 1261, 1262 (Pa.Super.1983). "Generally, where the defendant himself urges a new trial on post-trial motions, the double jeopardy clause does not bar a subsequent prosecution...." *Lafferty*, 461 A.2d at 1262. This general rule, however, is subject to several exceptions.

¶ 9 Pennsylvania has codified the principle of double jeopardy raised in this matter at section 109 of the Crimes Code. That section states, in pertinent part:

**§ 109. When prosecution barred by former prosecution for the same offense**

When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination that there was insufficient evidence to warrant a conviction. **A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.**

18 Pa.C.S.A. § 109(1) (emphasis added). Additionally, the courts of this Commonwealth have had ample opportunity to consider the scope of double jeopardy protections. Regarding the question of when retrial is barred, we have stated:

"[T]he principle of double jeopardy serves not one, but three distinct interests. In ascending degrees of importance, they are: (1) an interest in finality which may be overcome relatively easily; (2) an interest in avoiding double punishment which comes armed with a presumption in the defendant's favor; and (3) an interest in nullification—viz., an interest in allowing the system to acquit against the evidence—which is absolute. These three interests are loosely connected to the notion of ending litigation, and it is this connection that provides textual justification for bringing them under the common 'rubric' of double jeopardy."

\* \* \*

"Here we are concerned with that interest of double jeopardy which has been given the highest order of priority. The question presented is whether the allowance of a retrial on the charges ... erodes the original factfinders' absolute right to make the final factual determination on the charges submitted to them. It is, therefore, encumbent [sic] upon us to determine whether the exposure of appellant to the charges the Commonwealth now seeks to proceed to trial, offers to a new tribunal the opportunity to overturn the decision reached by the original finders of fact. If the original decision is not disturbed by the finding of the subsequent tribunal, this interest of double jeopardy is not offended.

If the original decision has foreclosed the question to be decided by the retrial then the retrial cannot be permitted."

*Commonwealth v. Hickson*, 402 Pa.Super. 53, 586 A.2d 393, 394–95 (Pa.Super.1990) (quoting *Commonwealth v. Zimmerman*, 498 Pa. 112, 115–16, 445 A.2d 92, 94 (1981)).

¶ 10 With these concepts in mind, we turn now to analyze the Commonwealth's arguments. The Commonwealth first argues that it should be allowed to re-prosecute Feaser for all degrees of homicide based on a theory of accomplice liability. In Feaser's first trial, the court's charge offered the jury the choice of three verdicts with respect to homicide: not guilty, guilty of murder in the first degree or guilty of murder in the third degree. *See* N.T., 12/10/93, at 573. The jury returned a verdict of guilty of murder in the third degree. *Id.* at 606. Thus, because the jury convicted Feaser of third-degree murder, a lesser included offense of first-degree murder, it acquitted him of first-degree murder. 18 Pa.C.S.A. § 109(1).

¶ 11 Moreover, pursuant to *Hickson*, there is no reason to disturb the conclusion of the original factfinders. Feaser's post-trial motion merely succeeded in setting aside the jury's findings regarding guilt. If a second jury were afforded the opportunity to consider a general homicide count, that jury could abrogate facts found by the first jury. The double jeopardy clause is intended to protect against such a result. *See generally, Hickson*, 586 A.2d at 395. Essentially, as our Supreme Court noted in *Zimmerman*, the original jury verdict in Feaser's case, acquitting him of first-degree murder, forecloses the possibility of retrying him on a general count of homicide. 498 Pa. at 116, 445 A.2d at 94. Therefore, considering both the dictates of section 109 and the rationale of *Hickson*, the Commonwealth is precluded from seeking a first-degree murder conviction in the second trial.

¶ 12 The Commonwealth contends, however, that the so-called "clean-slate" doctrine applies to allow retrial on a general homicide count. This doctrine was first announced by the United States Supreme Court in *North*

*Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). As our Supreme Court noted in adopting the doctrine under Pennsylvania law:

> In *Pearce*, the question arose as to whether [the constitutional guarantee against double jeopardy] **precluded imposition of a harsher sentence after conviction upon retrial.** The Court held that it did not. It reasoned that, since the original conviction was nullified at the defendant's behest, the slate was wiped clean, and the **sentencing court** could impose any legally authorized sentence, whether or not it was greater than the sentence imposed following the first trial.

*Commonwealth v. Martorano*, 535 Pa. 178, 190, 634 A.2d 1063, 1068 (1993) (emphasis added). In *Martorano*, two criminal defendants were originally convicted of first-degree murder. After a sentencing hearing, the jury deadlocked on the issue of life or death. Thus, pursuant to statute, the sentencing court imposed sentences of life imprisonment. The defendants then sought, and were awarded, a new trial on other grounds.

¶ 13 While waiting to be retried, the defendants sought bail. Reasoning that the case remained a capital case, the Commonwealth opposed the defendants' request for bail. The trial court granted the defendants' request for bail and this Court affirmed. Our Supreme Court reversed. The Court concluded that because the *Martorano* jury never reached a decision on the merits regarding the death penalty at the first trial, the Commonwealth had the right to seek the death penalty in the second trial. Thus, the case remained a capital case and the defendants were not entitled to bail.

¶ 14 After reviewing both *Martorano* and *Pearce*, we are convinced that the hearing court was correct when it concluded that the clean-slate doctrine applies solely in the context of sentencing, i.e., where a defendant appeals his sentence because he received a longer or harsher sentence following retrial and conviction.[3] *See* Hearing Court

---

**3.** Additionally, the Commonwealth's brief fails to direct this Court to any cases that apply the

Opinion, 9/25/97, at 6. Such facts are clearly not present in this case. Feaser was never sentenced following his first conviction and his second trial has yet to occur. Accordingly, the Commonwealth cannot avail itself of the clean-slate doctrine to justify the reprosecution of Feaser on a general homicide count.

¶ 15 Next, the Commonwealth contends that its retrial of Feaser should not be limited to third-degree murder because Feaser is subject to "continuing jeopardy" as defined by *Commonwealth v. Tabb*, 491 Pa. 372, 421 A.2d 183 (1980). In *Tabb*, as in all of the cases this Court has discovered regarding continuing jeopardy, the defendant entered a guilty plea. Specifically, Tabb was charged with, *inter alia*, a general count of murder. Pursuant to a negotiated plea agreement, Tabb entered a plea of guilty and "the Commonwealth certified that the charge of murder rose no higher than third degree[.]" *Id.* at 374, 421 A.2d at 184. Tabb then procured a new trial from our Supreme Court because the guilty plea colloquy had inadequately advised him "of the elements of the crimes of which he was charged." *Id.* Prior to Tabb's new trial, he filed an omnibus pretrial motion claiming that the principles of double jeopardy barred his retrial on counts of murder in the first and second degree.

¶ 16 Applying the doctrine of continuing jeopardy, our Supreme Court disagreed. It held that retrial of Tabb for murder in the first and second degree would only implicate the relatively weak double jeopardy interest in finality because Tabb's procurement of a reversal of his guilty plea had merely "occasioned a deferment of finality of the third degree murder charge." *Id.* at 379, 421 A.2d at 187. Consequently, the Court concluded that the trial court's acceptance of Tabb's negotiated plea had not placed him in jeopardy of first or second degree murder. Thus, the Commonwealth could prosecute Tabb for first and second degree murder at the new trial.

¶ 17 Because Feaser did not enter a guilty plea, the continuing jeopardy analysis of *Tabb* does not apply. Feaser was convicted of third-degree murder by a jury after the Commonwealth had a full and fair opportunity to present its theory of the case. Unlike the entry of a guilty plea, where there is no final resolution of the charges by a factfinder, a jury verdict necessarily resolves factual questions. Here, the jury charge unequivocally establishes that Feaser had been in jeopardy of first-degree murder. *See* N.T., 12/10/93, at 573. Nevertheless, the jury failed to convict Feaser of this charge. Therefore, allowing the Commonwealth to retry Feaser on a general homicide count would violate the highest interest protected by the principle of double jeopardy, nullification, not the relatively low interest of finality.

¶ 18 Recognizing this fact, the Commonwealth attempts to analogize the facts of the instant case to those of a guilty plea. It contends that we should treat Feaser's conviction for third-degree murder as if it were a guilty plea because the tainted juror prevented the jury from reaching a full and fair resolution of the factual issues. Additionally, it also attempts to analogize this case to cases where criminal defendants were retried after a mistrial.

¶ 19 After a careful review of the Commonwealth's arguments, we, like the hearing court, remain unconvinced. While the Commonwealth obviously believes that it did not have the opportunity for a full and fair hearing at the first trial, that jury, a jury that this Court concluded was biased against Feaser, considered all of the arguments and evidence. The judge charged the jury with finding no guilt, guilt of murder in the first degree or guilt of murder in the third degree on the count of homicide; the jury returned a verdict of murder in the third degree. Therefore, three things are clear: (1) that Feaser was placed in jeopardy of a conviction for murder in the first degree; (2) that there is a genuine interest in jury nullification to protect; and (3) that the interest in finality is not at issue. Consequently, we affirm the

clean-slate doctrine in a context other than sentencing. *See generally Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984); *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

hearing court's conclusion that the Commonwealth is limited, with respect to the count of homicide, to prosecuting Feaser for third-degree murder upon retrial.

¶ 20 The Commonwealth additionally argues that it should be allowed to retry Feaser for aggravated assault. It contends that, while the information charged Feaser with both intentional and reckless aggravated assault, the trial court's charge only presented intentional aggravated assault to the jury. Therefore, because the issue of reckless aggravated assault was not decided in the first trial, the Commonwealth asserts that it should be allowed to re-visit reckless aggravated assault at the second trial.

¶ 21 In support of this contention, the Commonwealth relies on both *Commonwealth v. Teagarden*, 696 A.2d 169 (Pa.Super.1997), and *Commonwealth v. Harris*, 400 Pa.Super. 12, 582 A.2d 1319 (Pa.Super.1990). In *Teagarden*, a defendant was charged in two separate informations with, *inter alia*, receiving stolen property and burglary. The Commonwealth, however, developed a single theory of the crime; i.e., that the defendant stole a truck and then used that truck to burglarize a house on the same night. Consequently, the cases had been consolidated for trial. Nevertheless, they were severed when the defendant filed a petition for a writ of *habeas corpus* in the robbery case.

¶ 22 The stolen truck case went to trial first and Teagarden was acquitted. Thereafter, the defense sought to prevent Teagarden's prosecution for burglary under Section 110 of the Crimes Code.[4] Because the Commonwealth's theory was that the stolen truck had been used to further the robbery, the defense argued that Teagarden's acquittal on the stolen truck charges necessarily precluded the possibility of a conviction for burglary in the second trial.

¶ 23 This Court disagreed and concluded that section 110 did not bar the defendant's prosecution for burglary. We stated that section 110 codifies the ancient doctrine of collateral estoppel; i.e., the doctrine that prevents the relitigation of an **issue** where that issue has been previously decided by a competent legal forum. *Teagarden*, 696 A.2d at 171. Thus, because there were multiple explanations for the jury's acquittal in the first trial, some of which failed to resolve the issues that would be before the jury in the second trial, we held that collateral estoppel did not apply to bar Teagarden's prosecution on a charge of burglary. *Id.* at 173.

¶ 24 The Commonwealth's reliance on *Teagarden*, a section 110 case, is misplaced. Most pertinent to our analysis, the Commonwealth sought to prosecute Teagarden for a **different offense** in the second proceeding. Thus, it was clear that the question was one of collateral estoppel. Here, we are not concerned with collateral estoppel because the Commonwealth wishes to retry Feaser on the very same charge—aggravated assault. Therefore, because a jury convicted Feaser of simple assault, a lesser included offense of aggravated assault, retrial on a charge of aggravated assault is barred by the plain language of section 109.

¶ 25 *Harris* is likewise inapposite. At the conclusion of deliberations in *Harris*, the jury returned verdicts of not guilty on the charge of robbery and guilty to simple assault. It was unable to reach a verdict, however, on the charge of aggravated assault. Consequently, the trial judge declared a mistrial. *Harris*, 582 A.2d at 1320. In a petition to bar retrial for aggravated assault, Harris alleged that the conviction on the simple assault charge acted as an acquittal of the aggravated assault charge. This Court disagreed, explaining that "retrial on charges on which a jury has been unable to agree is not barred" unless other factors were met. *Id.* at 1322.

¶ 26 Here, the trial judge did not declare a mistrial. Instead, the jury resolved each of the questions posed to it by the trial court. At count three, aggravated assault, the trial judge charged the jury with both aggravated assault and simple assault. The verdict slip in the record unequivocally establishes that the jury convicted Feaser of simple assault only. Therefore, because the jury obviously came to an agreement regarding aggravated

---

4. Section 110 of the Crimes Code is titled, "When prosecution barred by former prosecution for **different** offense." 18 Pa.C.S.A. § 110 (emphasis added).

assault, *Harris* does not allow the Commonwealth to retry Feaser on this charge.

¶ 27 Finally, the Commonwealth contends that it should be allowed to retry Feaser on the charge of aggravated assault because of an alleged error in the jury charge. Because the Commonwealth's attorneys stated at trial that they were satisfied with the jury charge, we agree with the hearing court's conclusion that the Commonwealth cannot seek to retry Feaser for aggravated assault on this basis. *See* Hearing Court Opinion, 9/25/97, at 8; *Commonwealth v. Betz*, 444 Pa.Super. 607, 664 A.2d 600, 606 n. 5 (Pa.Super.1995) (explaining that parties must preserve a challenge to the jury instructions by means of a specific objection presented to the court before the jury retires to begin deliberations). Therefore, we affirm the hearing court's determination that the Commonwealth's retrial of Feaser with respect to assault is limited to the charge of simple assault.

¶ 28 We now turn to Feaser's arguments on appeal. Feaser first argues that he should not be retried on the homicide count, generally, or for third-degree murder, specifically, because the charges of homicide and aggravated assault derived from the same overt act. Consequently, because the jury instruction did not distinguish between the factual bases of each charge, an acquittal on the aggravated assault charge should now act as a bar to retrial on the homicide count. Alternatively, because aggravated assault is a lesser included offense of third-degree murder, Feaser contends that the acquittal on the aggravated assault charge demonstrates that the Commonwealth failed to meet its burden for both.

¶ 29 Feaser's argument is unconvincing. Most importantly, the cases upon which he relies involve double jeopardy in the context of sentencing. *See Commonwealth v. Belsar*, 544 Pa. 346, 676 A.2d 632 (1996) (holding that aggravated assault based on kicking a wounded victim did not merge with attempted murder for sentencing purposes); *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20 (1994) (concluding that a single criminal act supplies the necessary elements for as many crimes as were applicable to the act, with the proviso that **for sentencing purposes**, the greater and lesser included offenses merge). From these cases, Feaser argues that his acquittal on the charge of aggravated assault, where the trial judge did not distinguish between the stabbing and the beating of the victim in the jury charge, bars retrial for simple assault. Feaser's argument, however, ignores the facts that his case does not involve sentencing and that he was convicted of third-degree murder by the jury.

¶ 30 It is this latter fact that makes Feaser's reliance on *Commonwealth v. Zimmerman, supra,* unavailing. In *Zimmerman*, the defendant was charged with numerous offenses, including general criminal homicide and assault. The jury, however, was only able to return not guilty verdicts as to first-degree murder and simple assault. It was unable to reach verdicts as to any of the other charges. The Commonwealth then sought to retry Zimmerman on the remaining charges. Upon review, our Supreme Court concluded that, despite the fact that the jury failed to reach a verdict on some charges, the Commonwealth was prohibited from attempting to seek a conviction on those charges at a second trial "where there [had] been an acquittal of a lesser constituent offense." *Id.* at 118, 445 A.2d at 95; *accord Hickson*, 586 A.2d at 395 (stating that the constitutional bar against double jeopardy will preclude retrial of a criminal charge upon which a jury has **deadlocked** if the same jury has also acquitted the defendant of a constituent offense).

¶ 31 Instantly, while the jury acquitted Feaser of aggravated assault, it also convicted him of third-degree murder; i.e., it did not fail to reach a verdict or deadlock respecting the greater included offense. Therefore, the facts of *Zimmerman* are not analogous to those of the instant case and cannot support Feaser's contention that his acquittal on the charge of aggravated assault bars his retrial for third-degree murder. Accordingly, we affirm the hearing court's conclusion that the Commonwealth could properly retry Feaser on the charge of third-degree murder.

¶ 32 Lastly, Feaser contends that the information that charged him with criminal conspiracy was worded so broadly that it included accomplice liability within criminal conspiracy. Therefore, when the jury returned a not guilty verdict with respect to both counts of conspiracy, it is impossible to tell whether the jury only considered conspiracy or whether it considered both conspiracy **and** accomplice liability during its deliberations. Because the defendant deserves the benefit of the doubt, Feaser asserts, double jeopardy must bar retrial on an accomplice theory of liability.

¶ 33 Feaser's contention is without merit. Contrary to his claims, both the homicide **and** the criminal conspiracy counts of the information were based on a theory of accomplice liability. Consequently, the fact that the jury acquitted Feaser on the charges of criminal conspiracy merely means that the jury concluded that Feaser did not commit criminal conspiracy or participate in a criminal conspiracy. Likewise, the jury's finding of guilt on the charge of third-degree murder indicates that it accepted the Commonwealth's argument that Feaser either caused or acted as an accomplice in causing the victim's death. Moreover, we note that our review of the notes of testimony and the trial court's charge also indicates that the Commonwealth tried Feaser for homicide on an accomplice theory of liability. *See, e.g.,* N.T., 12/10/93, at 573–579.

¶ 34 Because Feaser is incorrect when he asserts that only the criminal conspiracy counts of the complaint charged him with accomplice liability, there is no reason why the principles of double jeopardy prevent the Commonwealth from retrying Feaser on the charge of third-degree murder based on accomplice liability. *See Hogan, supra* ; *Lafferty, supra.* Therefore, the jury's verdict of not guilty regarding the criminal conspiracy counts cannot act as an acquittal of Feaser's accomplice liability for third-degree murder. Accordingly, we affirm the hearing court's conclusion that the Commonwealth may retry Feaser for third-degree murder on an accomplice theory of liability.

¶ 35 Order affirmed.